IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LYNN ALLEN MOORE, by and through LETA MAE MOORE, his personal representative, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. CIV-07-1293-L |
| CITY OF SHAWNEE, POTTAWATOMIE COUNTY PUBLIC SAFETY CENTER TRUST, a.k.a. POTTAWATOMIE COUNTY JAIL, RODNEY V. BOTTOMS, individually as Director of the POTTAWATOMIE COUNTY PUBLIC SAFETY CENTER TRUST, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**O R D E R**

Plaintiff Lynn Allen Moore, by and through Leta Mae Moore, his personal representative, originally brought this civil rights action against defendants City of Shawnee, Pottawatomie County Public Safety Center Trust, a.k.a. Pottawatomie County Jail, and Rodney V. Bottoms, individually as Director of the Pottawatomie County Public Safety Center Trust pursuant to 42 U.S.C. § 1983.[1]  Plaintiff's claim arises from the death of Lynn Allen Moore on December 26, 2003. At the time of his death, Mr. Moore was jailed at the Pottawatomie County Public Safety Center.

---

[1] The parties have stipulated to the dismissal of the City of Shawnee.  *See* Stipulation of Dismissal with Prejudice of All Claims Alleged Against Defendant City of Shawnee [Doc. No. 28].  The parties have also recently stipulated to the dismissal of defendant Rodney V. Bottoms, who is deceased *See* Stipulation to Dismissal of Dismissal with Prejudice as to Defendant Rodney V. Bottoms Individually as Director of the Pottawatomie County Public Safety Center Trust [Doc. No. 42].

Plaintiff asserts that at the time Mr. Moore was arrested on the day after Christmas in 2003, he was wrongly assumed to be drunk. Plaintiff contends that Mr. Moore had a severe medical problem, as reported by one jailer. Nonetheless, no medical care was provided. Mr. Moore was found dead in his cell, at age 44, early that evening. Plaintiff contends that the Trust was deliberately indifferent to the serious medical needs of Mr. Moore.

An Incident Report by jailer Randall Robinson providing details related to the incident involving Mr. Moore (attached as Exhibit 4 to plaintiff's response brief, Doc. No. 33) provides the following background facts with respect to the events of December 26, 2003[2]:

* * *

> Details: At approximately 1230 hours Inmate Moore, Lynn Allen was brought to the city facility by Shawnee Police Department for public intoxication. He was accepted by Detention Officer John Huesdens. When he came through the door of the intake area, I noticed Moore had a very yellow color to his skin that is associated with liver problems. I had told Officer Huesdens that the person listed had a severe medical problem.
>
> I then moved Moore to the medical office to try and evaluate him. He was able to tell me that the back of his head and his right wrist were hurting. While trying to question him about his medical problems, he became unconscious, and started to fall. I caught him before he fell and assisted him to the ground. I called medical staff Juree Darnell immediately, to see what we should do. She asked me to contact Commander Bob Glandon, to possibly see if we can get a medical release on him.

---

[2] The Incident Report is dated "12/26/2004", an apparent typographical error.

I then called Commander Glandon, I advised him of the problems with Moore.  He asked me to wait until he could talk with the City Judge.  After a short time the Judge was contacted, and the Judge made arraingments [sic] to release him, only after he was sober enough to do so for his safety.  I was informed that his release time would be about 1930 hours.

He appeared to be sleeping during all observations during the sight checks during the day.  Booking Officer Hicks observed nothing out of order, while watching the monitors.

During the last sight check at approximately 1820 hours, Officer Villalobos observed Moore laying on his side on the west side of the pod on the bench facing towards the center of the room, he appeared to be asleep.  She made note of him being apparently asleep on the sight check at the above time.

Officer Villalobos was sent to the county facility just after the sight check at the time listed, by me to relieve Officer Rusty McCart, so he could be sent home for time off.

I (Robinson) was left to take care of the city facility with the assistance of Booking Officer Hicks.  We were very busy up to the time of approximately 1950 hours.  At that time I went to G Pod to remove Moore.  Upon opening the door, Moore was sitting in the floor against the wall, shirtless and with his legs crossed.  His arms were at his side and his head was in a slight downward angle.  When I first seen him, I knew something was wrong.  I approached the body and checked for a pulse at the carotid artery and used the back of my hand against the chest to feel for movement and termpurature [sic].  There were no signs of life.  I exited the pod, locked the door and went to booking to call Commander Glandon.

*   *   *

Another Incident Report, attached as Exhibit 8 to plaintiff's response brief, Doc. No. 33, was prepared by a member of the medical staff, CMA J. Darnell, on

December 26, 2003 at approximately 12:24 p.m.  This Incident Report provides, in pertinent part, the following:

> I received a call on my cell phone around 12:20 p.m. on December 26, 2003 from D.O. Robinson stating that a man had come into our facility for public drunk and he looked yellow to him.  I asked D.O. Robinson if the officer had taken him to the hospital since he was that drunk and looked yellow.  D.O. Robinson said, "no".  I asked D.O. Robinson if they did a breathalyzer test and he said, "no".  Then Mr. Robinson said, 'he was in the medical room with this guy and he became unconscious and fell but did not hurt himself.'  Mr. Robinson caught him.  I asked D.O. Robinson if he would call Commander Glandon and see if we could get him OR'D out.  He said he would call Commander Glandon.  I asked Robinson to call me back if he needed me.  At approximately 2100 hours, I received a phone call from Director Bottoms stating that this gentleman had passed away.

Plaintiff argues that the Trust's alleged policy or custom of releasing prisoners with medical problems to avoid the cost of treating them resulted in the intentional denial of and delayed access to medical care.  Plaintiff asserts that this policy or custom is shown by (1) the use by employees of the phrases "medical release" and "medical release bond," meaning prisoners are released because of medical problems and the jail will not have to pay for treatment; and (2) contrary to official policy requiring a nurse, the medical person available to the jailer who was concerned about Mr. Moore was only a certified medical assistant (CMA).  Plaintiff argues that the CMA did not consider any treatment, instead initiating the process for Mr. Moore to be released on his own recognizance, *i.e.*, given a medical release.

According to plaintiff's response brief:

> The policy/custom of medical releases is so ingrained in the system that no one gave another thought to medical attention for Moore while he was being held in detox after the judge's decision. He was not offered any medical attention at the jail, and he was not promptly released to his mother, as the judge allowed, so they could go for outside medical care. . . . The denial of medical treatment obviously led to Moore's death in jail. Even if his chance of survival was uncertain, he had a chance and it was destroyed by the jail's inaction.

Plaintiff's response, Doc. No. 33, p. 14.

The Report of Autopsy lists Mr. Moore's cause of death as "Complications of alcoholism (cirrhosis of the liver)." Exhibit 2 to Doc. No. 34.

This matter is before the court on the Motion for Summary Judgment of Defendant Pottawatomie County Public Safety Center Trust ("Trust"), the sole remaining defendant in this action. Plaintiff responded to the motion and a reply brief was filed.

The court takes note that plaintiff's response to the Trust's motion fails to comply with the court's summary judgment procedure. Although plaintiff's opposition does contain a section which contains a statement of "Disputed Facts" as required by LCvR56.1, the court notes that the opposition brief goes on to provide a section entitled "Plaintiff's Undisputed Facts." The court file reflects that the dispositive motions filing deadline in this case was December 15, 2008. [Doc. No. 17]. Plaintiff's objection was not filed until December 23, 2008. Therefore, to the extent plaintiff's sought to file a cross-motion for summary judgment,

supported by plaintiff's own version of "undisputed facts," such an attempt was untimely and improper and need not be considered.

It should also be noted that the Trust's briefs incorporate by reference certain undisputed facts and arguments asserted in the Motion for Summary Judgment of Defendant Rodney V. Bottoms in his Individual Capacity [Doc. No. 32], which was filed before Bottoms was dismissed pursuant to a stipulation of the parties.  Although Bottoms' motion is technically moot, the court has properly considered all of the incorporated facts and arguments from the briefs filed in connection with Bottoms' dispositive motion in ruling on the Trust's motion, to the extent necessary.

The unique procedural history of the case and the unorthodox format of plaintiff's response has somewhat complicated the court's summary judgment review.  However, the court has carefully reviewed the materials submitted and concludes that the summary judgment motion should be granted because the Trust is entitled to judgment as a matter of law.

The law applicable to plaintiff's claim is not in dispute.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party bears the initial burden

of showing that there is an absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Applied Genetics Int'l. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves," to avoid summary judgment.  Celotex, 477 U.S. at 324.  Such evidence includes reference to affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment.  In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party.  Board of Education v. Pico, 457 U.S. 853, 863 (1982).  The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district

court.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  Although the district court has the discretion to go beyond the referenced portions of the supporting material, it is not required to do so.  Id.

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988).  The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.  Allegations alone will not defeat summary judgment.  Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994).

The Eighth Amendment constitutional protection against deliberate indifference to a prisoner's serious medical needs announced in Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment.  Barrie v. Grand County, Utah, 119 F.3d 862, 867 (10th Cir.1997).  Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. Id., at 869.  This is true whether the indifference is manifested by prison doctors responding to the prisoner's needs, or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed.  Id.  Deliberate indifference requires a higher degree

of fault than negligence or even gross negligence. Id. It requires a lower standard than intentional and malicious infliction of injury, however. Id. An official acts with deliberate indifference if his conduct or adopted policy disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights. Id. A showing of deliberate indifference requires that defendant must both be aware of facts from which the inference could be drawn and that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Under 42 U.S.C. § 1983, a governmental entity may not be held liable simply because it employs a person who violated a plaintiff's federally protected rights. Jenkins v. Wood, 81 F.3d 988, 993 (10th Cir. 1996). Such a defendant may not be held liable on a theory of *respondeat superior*. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691 (1978). Where a single incident forms the basis for a constitutional claim, the plaintiff must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued. Hollingsworth v. Hill, 110 F.3d 733, 743 (10th Cir. 1997) (*quoting* Jenkins, 81 F.3d at 994).

A body such as a local government can be sued directly under § 1983 "where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." Monell, 436 U.S. at 690. Local governmental bodies may also be sued under § 1983 for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id., at 690-91.

> Under 42 U.S.C. § 1983, a local government may be held liable for the constitutional violation of its employees only when employee "action pursuant to official municipal policy . . . caused a constitutional tort." Monell, 436 U.S. at 691, 98 S.Ct. at 2036. Therefore, "to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." Jenkins v. Wood, 81 F.3d 988, 993-94 (10th Cir. 1996) (*citing* City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989) and Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)).

Hollingsworth, 110 F.3d at 742.

Here, plaintiff has failed to come forward with evidence that Mr. Moore's death was caused by an unconstitutional policy of the Trust.[3] The record shows that the Trust had policies in place to address the medical needs of inmates, including "Intake Assessment," "Health Appraisal of Inmates," "and "Medical Emergencies." Exhibits 3, 4, & 5 to Trust's Motion for Summary Judgment, Doc. No. 31. A review of these written policies reveals the following: The "Intake Assessment" policy provides that a medical triage sheet is completed during

---

[3] As noted by the Trust, plaintiff has not sued the individual detention officer(s) who allegedly did not follow these policies.

screening of a new arrestee, and the officer reviews the arrest paperwork to promptly identify any physical or psychological problems the arrestee may have. Any such problems are reported to the facility's medical personnel. The "Health Appraisal of Inmates" policy requires that information be collected to properly classify inmates, promote awareness of and respond to their medical conditions, and maintain adequate records of their health status. The facility provides medical care and medical referrals. If an inmate has a medical condition requiring immediate evaluation, he is referred to the hospital. The "Medical Emergencies" policy provides that health services staff and all staff will respond immediately to all medical emergencies. When necessary, emergency medical services in the community are utilized.

While the existence of these written policies and their terms cannot reasonably disputed, plaintiff nevertheless attempts to "dispute" that these policies were actually carried out by the Trust with respect to Mr. Moore. Instead, plaintiff argues, it is "common practice" for the Trust to seek release of inmates for medical reasons rather than to seek treatment for them. Plaintiff argues that the Trust had a policy or custom of releasing prisoners with medical problems to avoid the cost of treating them.[4] According to plaintiff, this policy resulted in both

---

[4] In disputing the Trust's statement that the Pottawatomie County Public Safety Center does not have any policy, practice, or custom that violated Mr. Moore's rights or deprived him of medical care, plaintiff relies on her own deposition testimony for the assertion that Officer Huesdens "clearly state[d] that they [the Trust] do not seek medical treatment for prisoners because they do not want to spend money on medical treatment." Plaintiff's response, Doc. No. 33, p. 5. However, as noted by the Trust, plaintiff's deposition testimony reporting Officer Huesdens' alleged statement is hearsay.

the intentional denial of and delayed access to medical care.  However, the court finds that the plaintiff has failed to connect Mr. Moore's death or deprivation of constitutional rights with any of the Trust's policies or customs. *See* Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993) (law requires a causal link between the policy and plaintiff's injuries).

When challenged on the issue of whether positive medical evidence indicates that any delay in or denial of medical treatment contributed to a pretrial detainee's injury, the plaintiff is required to identify verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *See*, Daniels v. Gilbreath, 668 F.2d 477, 488 (10th Cir.1982) (trial court should have directed a verdict for the defendants in this § 1983 case involving the death of a prisoner; evidence failed to support the verdict because, in a medical case, the causal element must be proven by positive evidence); Winton v. Board of Commissioners of Tulsa County, 88 F.Supp.2d 1247, 1258 n. 7 (N.D.Okla.2000) (inmate died following attack during incarceration; defendants did not move for summary judgment based on failure to provide medical evidence verifying the detrimental effect on the plaintiff of the delay in medical treatment so the court did not address that issue, but it noted the requirement for medical evidence).  When a prisoner's Eighth Amendment claim is premised on an alleged delay in medical care, the prisoner must "show that the delay resulted in substantial harm." Kikumura v. Osagie, 461 F.3d 1269, 1292 (10th Cir. 2006) (citation omitted),

*abrogated on other grounds by* <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1246-47 (10th Cir. 2008). That "substantial harm" can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm. <u>Id.</u>, (citation omitted).

Here, plaintiff has failed to show that the more timely receipt of medical treatment would have minimized or prevented the harm to Mr. Moore. Plaintiff has presented no evidence linking the death of Mr. Moore to allegedly unconstitutional conduct. The record demonstrates that the Trust had written policies to protect the health of inmates such as Mr. Moore. Even assuming for the sake of argument that plaintiff could establish a policy or custom of releasing prisoners with medical problems to avoid the cost of treating them (and delaying medical treatment pending that release), the court finds that plaintiff has failed to show a causal link between any delayed access to medical treatment and Mr. Moore's injury. Plaintiff's bare statement, unsupported by any evidence, that the "denial of medical treatment obviously led to Moore's death in jail[,]" is far short of evidence of a causal link between the policy or custom of the Trust and Mr. Moore's death and is entirely speculative. Plaintiff states that "[e]ven if his chance of survival was uncertain, he had a chance and it was destroyed by the jail's inaction." The statement that Mr. Moore had a chance of survival is also

pure speculation. Of course, speculation and mere allegations are insufficient at this stage of the proceedings.

Plaintiff has presented no causal link between a policy or custom of the Trust and the injury alleged, *i.e.*, the death of Mr. Moore. Accordingly, the Trust is entitled to summary judgment. Although Mr. Moore's death was indeed unfortunate, the evidence does not establish constitutional liability on the part of the Trust. As noted by the Trust in its reply brief, plaintiff has not responded to its argument that the Trust is entitled to summary judgment regarding plaintiff's state law tort claims. Accordingly, the Motion for Summary Judgment of Defendant Pottawatomie County Public Safety Center **[Doc. No. 31]** should be and is hereby **GRANTED** in its entirety.

It is so ordered this 19th day of February, 2009.

*/s/ Tim Leonard*
TIM LEONARD
United States District Judge